IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


BERMUDEZ V. SALAZAR


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


AGUSTIN BERMUDEZ, APPELLEE,

V.

LUIS SALAZAR, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT,
AND FABIOLA PORRAS, THIRD-PARTY DEFENDANT, APPELLEE.


Filed May 16, 2017.    No. A-16-324.


Appeal from the District Court for Cass County, JEFFREY J. FUNKE, Judge, on appeal thereto from the County Court for Cass County, JOHN F. STEINHEIDER, Judge. Judgment of District Court affirmed.

Liam K. Meehan, of Schirber & Wagner, L.L.P., for appellant.

Gerald D. Johnson, of Johnson & Pekny, L.L.C., for appellee Agustin Bermudez.

Ralph E. Peppard for appellee Fabiola Porras.


INBODY, RIEDMANN, and ARTERBURN, Judges.

INBODY, Judge.

### INTRODUCTION

Luis Salazar appeals an order of the district court for Cass County, which affirmed an order of the county court finding in favor of Agustin Bermudez on his breach of contract claim and an award of $14,000 in damages. Salazar also appeals the district court's order affirming the county court's dismissal of his counterclaim against Bermudez and his wife, Fabiola Porras, and the determination that Salazar's counterclaim against Porras was frivolous and granting Porras' motion for attorney fees.

- 1 -

## STATEMENT OF FACTS

In the summer of 2011, Salazar, Bermudez, Maria Salazar, and Carmen Herrera organized a partnership to open a Mexican Restaurant, La Fiesta, in Plattsmouth, Nebraska. The partnership was organized so that each of the partners owned 25 percent of the restaurant. The restaurant opened for business in August or September 2011. The parties eventually realized the partnership was not going to work out. Consequently, discussions took place between the partners and, in December, Salazar signed a letter stating: "This letter is to attest that I, Luis Salazar owe and will pay back money which was borrowed from Augustin [sic] Bermudez in the amount of $66,900. The purpose of this loan was to open the Mexican Restaurant currently known as La Fiesta Restaurant[.]" The letter was also notarized. In addition to signing the letter, Salazar wrote three checks to Bermudez: one for $52,900; a second for $10,000; and a third for $4,000. Salazar subsequently placed a stop payment on the second and third checks and failed to pay Bermudez the remaining $14,000.

Bermudez filed a complaint against Salazar seeking damages as a result of a breach of contract. Salazar filed an answer and counterclaim, alleging that Bermudez and his wife, Porras, converted Salazar's funds and personal property for their own use. The matter was consequently set for trial.

### BERMUDEZ'S CLAIM

The court initially held a trial regarding Bermudez's complaint. At trial, Bermudez testified that he entered into a business relationship with Salazar. Bermudez indicated that when it became apparent that the partnership was not going to work out, Salazar desired to buy the restaurant and there was an agreement to split the partnership, with the restaurant remaining with Salazar and Maria. Following negotiations, Salazar was going to pay for 50 percent of the restaurant for Bermudez's and Carmen's portions, totaling $66,900. Bermudez indicated that the $66,900 amount was based on the sum of money furnished by Bermudez and Carmen in the restaurant's initiation. In total, it cost approximately $146,000 to open the restaurant. Bermudez indicated that he paid around $46,000 individually from his bank account, other restaurants he owned, and some cash, in the initial costs. The $66,900 amount was based upon "checking all the receipts with . . . Salazar, in front of him" and that the amount that was due, the 50 percent, was $66,900.

Bermudez testified that upon a verbal agreement that Salazar would pay $66,900, Bermudez and Salazar went to an accountant to get an agreement prepared and notarized. Specifically, Bermudez indicated that the agreement provided that Bermudez would surrender all his interests in the business for $66,900. After Salazar signed the agreement at the accountant's office and gave the three checks to Bermudez for Bermudez's and Carmen's interests in the restaurant, Bermudez went to deposit the checks, but was unable to deposit the $10,000 and $4,000 checks because Salazar placed stop payments on them.

Salazar testified at trial, claiming that Bermudez and Carmen did not purchase $66,900 worth of items for the restaurant, while also claiming that he was not loaned $66,900 by Bermudez and Carmen. Salazar admitted that he met with Bermudez and that they went over a "few receipts", but that Bermudez only provided him a handwritten document of Bermudez's receipts totaling less

than $66,900. Consequently, Salazar requested Bermudez bring him the "real receipts" but stated that Bermudez never provided them.

In his testimony, Salazar claimed that Bermudez and Carmen paid "around [$]40[,000]" for their initial restaurant costs. Moreover, Salazar stated that he purchased the restaurant for $66,900 because he was threatened and forced to by the other partners and because he was scared.

Further, Salazar stated that in order for Bermudez to receive the $66,900, there was a verbal agreement that Bermudez would "keep the store stocked." Salazar indicated that he asked his accountant to prepare the agreement between the parties, but did not include any oral agreements between Salazar and Bermudez, such as that regarding keeping the store stocked, because he trusted Bermudez. Salazar stated that he gave the checks, in good faith, to Bermudez, but that when he later returned to the restaurant following signing the agreement, he noticed at least $10,000 of merchandise missing from the restaurant, which caused him to cancel the two checks. Salazar claimed that Bermudez took some of the items from the restaurant and that he saw those items at another restaurant Bermudez opened in Minnesota.

### SALAZAR'S COUNTERCLAIM

The county court also heard testimony and was presented evidence regarding Salazar's counterclaim for damages as a result of conversion and a breach of fiduciary duty by Bermudez and Porras.

Salazar testified that in September and October 2011, Bermudez was the bookkeeper for the restaurant. Salazar opined that Bermudez kept two separate sets of books, one labeled "good" and one labeled "bad" in the Spanish language, allowing Bermudez to steal at least $18,000 from the restaurant. Salazar believed the "good" book to be what was actually coming into the business, while the "bad" book was not what was coming into the business, resulting in a difference of $18,000 between the two books. Salazar contended he had credit card receipts to compare the books, but the receipts were not provided to the court. Additionally, Salazar testified that he included Porras in his counterclaim because he believed she was helping Bermudez take the $18,000. Salazar acknowledged that he had no evidence that Porras took anything, despite the allegations against her listed in his lawsuit. Salazar admitted that the restaurant's books were never audited by an accountant.

Salazar also alleged that Bermudez signed Salazar's name to contracts on several occasions, including a contract for an ice machine and an iced coffee and tea machine. However, Salazar also indicated he was seldom at the restaurant because he was residing in Indiana. Salazar further claimed that when he entered into the agreement with Bermudez, he was led to believe by Bermudez that that the ice machine and iced coffee machine had been purchased. However, Salazar later learned that both machines were leased. Salazar testified that Bermudez was under the influence of drugs and alcohol while at work.

Salazar stated that he did a visual inventory of the restaurant the day before he signed the restaurant purchase agreement. Salazar claimed that when he did inventory of the equipment, he noticed food and alcohol items missing, spoiled food, and empty boxes that once contained alcohol. Salazar claimed the total worth of the items missing was $10,000. Specifically, Salazar stated that "I have an idea, more or less, on what was missing, but I could not confirm . . . what

was missing." Salazar said he signed the agreement and the checks, despite knowing that items were missing when he signed them, because he "didn't want to have any more problems."

Bermudez denied keeping two sets of books for the restaurant and testified his belief that the numbers on the books provided by Salazar were "manufactured by splicing and erasing and using a copy machine to get different balances[.]" Bermudez stated he was the initial accountant for the restaurant, but that he turned in the accounting books to an accountant at the end of every month. Bermudez testified that Salazar had access to books from Bermudez's other restaurants and that some of the inputs in the books provided by Salazar were based on those other restaurants. Bermudez denied threatening Salazar, drinking alcohol while at work, using drugs, or taking any items from the restaurant. Bermudez testified that Salazar often told people to sign his name because he was not at the restaurant. Bermudez also indicated that Salazar had an understanding that the restaurant's machines were a "lease/purchase".

At trial, Porras moved to dismiss Salazar's claim. The court sustained the motion and dismissed Porras because Salazar "did not provide a case against [Porras]." Porras later filed a motion for attorney fees and costs, claiming that the matter against her was frivolous and brought in bad faith.

COUNTY COURT DETERMINATION

At the conclusion of trial, the court directed the parties to submit written arguments and briefs.

The county court determined that Salazar and Bermudez entered into an agreement for Salazar to pay Bermudez $66,900, "which constitutes either a loan or advance for the purpose of [Bermudez] opening [the restaurant]," that Salazar "agreed to pay [Bermudez] $66,900[] for his share of the business or the amount that [Bermudez] advanced for the purpose of opening the restaurant," and that the "agreement of . . . Salazar to repay . . . Bermudez . . . was memorialized in writing" based upon the initial oral contract. The county court determined that the case was "a buy/sell agreement or a surrender of interest agreement" that Bermudez "walked away from the business for the sum of $66,900[] to be paid to him by [Salazar]."

Despite the agreement stating that Salazar would "pay back the money which was borrowed", the county court determined that the agreement executed by Salazar was a contract "for the purpose of purchasing [Bermudez's] interest in the restaurant business." The county court determined that Bermudez established by a greater weight of the evidence that he was entitled to the $14,000 remaining balance due on the agreement and that Salazar failed to establish any affirmative defenses to Bermudez's claim.

Moreover, the county court determined that Salazar failed to provide sufficient or credible evidence to meet the burden of proof for his counterclaim for conversion, breach of fiduciary duty, or fraud, because the evidence was inconclusive and lacked credibility. As a result, the county court dismissed Salazar's counterclaim.

In a later order regarding Porras' motion for attorney fees, the county court noted that Salazar "offered no evidence against [Porras] and admitted that he had no evidence to offer on his third-party complaint and that he knew that before time of trial." The county court determined that

Salazar's claim against Porras was a frivolous action and was made in bad faith, and subsequently awarded Porras $3,675 in attorney fees.

DISTRICT COURT DETERMINATION

Salazar appealed the county court's decision to the district court. The district court affirmed the county court's decision. The district court determined the county court had sufficient evidence to support Bermudez's claim that he entered into a written agreement with Salazar to pay $66,900 for 50 percent of the restaurant and that Salazar breached the agreement by stopping payments on the two checks totaling $14,000.

Additionally, the district court affirmed the county court's determination to dismiss Salazar's counterclaim as "[t]he evidence was in controversy" and since Salazar "bore the burden of proof, it was his responsibility to provide sufficient evidence to overcome that burden." The district court noted that Bermudez denied taking any items from the restaurant and that Salazar did not complete an inventory of the restaurant's equipment, food, and alcohol, and despite knowing that items were missing prior to executing the agreement and signing the check, he entered into the agreement.

Finally, the district court agreed with the county court's determination to award Porras attorney fees. The district court determined that Salazar's inclusion of Porras in the action was done in bad faith and consequently concluded the county court did not err in its determination that Salazar's claim against Porras was frivolous and made in bad faith.

This appeal now follows.

ASSIGNMENTS OF ERROR

On appeal, Salazar's assignments of errors, consolidated and restated, are that the county and district courts were "clearly wrong" by determining a valid contract was formed, erred in finding an enforceable oral contract existed, erred in finding there was insufficient evidence for Salazar to prove his counterclaims, and erred in finding that Salazar's claim against Porras was frivolous and in awarding Porras attorney fees.

STANDARD OF REVIEW

The district court and higher appellate courts generally review appeals from the county court for error appearing on the record. *Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *Id*.

In a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Hooper v. Freedom Fin. Grp., Inc.*, 280 Neb. 111, 784 N.W.2d 437 (2010). When reviewing a judgment awarded in a bench trial, an appellate court does not reweigh the evidence, but considers the judgment in a light most

favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Id.*

The construction of a contract is a question of law, and is reviewed de novo. *Labenz v. Labenz,* 291 Neb. 455, 866 N.W.2d 88 (2015).

On appeal, a trial court's decision allowing or disallowing attorney fees for frivolous or bad-faith litigation will be upheld in the absence of an abuse of discretion. *Central Neb. Pub. Power Dist. v. North Platte NRD,* 280 Neb. 533, 788 N.W.2d 252 (2010).

## ANALYSIS

### VALID CONTRACT

Salazar contends the county court and district court were "clearly wrong" by determining a valid contract between Salazar and Bermudez was formed because "the money listed in the purported written contract was never actually provided and any consideration was lacking as past consideration."

To create a contract, there must be both an offer and an acceptance, and a meeting of the minds or a binding mutual understanding between the parties to the contract. *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015). A contract is not formed if the parties contemplate that something remains to be done to establish contractual arrangements or if elements are left for future arrangement. *Id*. A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances. *Stitch Ranch v. Double B.J. Farms,* 21 Neb. App. 328, 837 N.W.2d 870 (2013). Evidence of facts and circumstances, together with the words of the parties used at the time, from which reasonable persons in conducting the ordinary affairs of business, but with special reference to the particular matter on hand, would be justified in inferring such a contract or promise, is sufficient. *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014). The determination of the parties' intent to make a contract is to be gathered from objective manifestations--the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction. *Id*.

Salazar's contention that he did not form a contract with Bermudez because the money in the contract was never actually provided and was past consideration is unpersuasive. The evidence and testimony provided at trial indicate that Bermudez spent capital to initiate the restaurant and, because of difficulties between the partners, Salazar decided to purchase the restaurant. Salazar and Bermudez later came to a verbal understanding as to the monetary value of 50 percent of the restaurant: $66,900. Salazar then asked his accountant to prepare a document representing the agreement reached between Salazar and Bermudez, and Salazar consequently signed the agreement. The agreement provided that Salazar agreed to pay Bermudez $66,900, and Salazar then provided three checks totaling $66,900 to Bermudez in exchange for Bermudez's interest in the restaurant. Salazar then breached the agreement by stopping payments on two of the checks totaling $14,000 and failing to pay that amount to Bermudez.

As the parties' oral agreement was reduced to writing and Salazar signed the agreement, in addition to providing the three checks to Bermudez for his interest in the restaurant, it is clear that

the parties had a contract supported by adequate consideration. We find Salazar's claim to be without merit.

## ENFORCEABLE ORAL CONTRACT

Salazar's second contention is that the county court and district court erred in finding that an enforceable oral contract existed between himself and Bermudez. In addition to reiterating his argument regarding past consideration, Salazar contends that at the time of the agreement, he believed the restaurant was stocked with "missing" inventory of at least $10,000, but later learned the inventory was not included. Consequently, Salazar argues that since there was no meeting of the minds regarding what, if any, inventory was included in the deal, the court erred in finding there was an enforceable oral contract.

Again, we find Salazar's contention to be unpersuasive. The evidence at trial indicated that Salazar signed the contract and wrote the checks, despite knowing that items were "missing" when he signed them. However, Bermudez denied ever taking any items from the restaurant. Additionally, Salazar stated that he did not have a written inventory of what was within the restaurant, but only did a visual inventory before he signed the purchase agreement. Specifically, Salazar stated that "I have an idea, more or less, on what was missing, but I could not confirm . . . what was missing."

As mentioned above, there was a valid, written contract between Salazar and Bermudez and in exchange for Salazar paying $66,900, Bermudez sold his interest in the restaurant. Bermudez denied taking any of the items from the restaurant and Salazar provided no proof of inventory missing from the restaurant. Moreover, Salazar still entered into the contract despite his contention that Bermudez had taken items from the restaurant. As a result, we determine Salazar's contention to be meritless.

## SALAZAR'S COUNTERCLAIM

Salazar claims the county court and district court erred in finding there was insufficient evidence to prove his counterclaims. In his counterclaim, Salazar alleged that Bermudez stole funds from the restaurant by fabricating the restaurant's records causing a loss of $18,000, and in taking $10,000 worth of inventory from the restaurant.

As mentioned previously, Salazar failed to conduct an inventory of the restaurant's items and claimed he entered into the agreement despite knowing there were missing items, while Bermudez denied taking any items from the restaurant.

Regarding the alleged $18,000 taken by Bermudez, Salazar contended that Bermudez kept two different sets of books for the restaurant, which Bermudez denied. Salazar also claimed that he had credit card receipts to compare the books, but those were never provided. Further, Salazar acknowledged that he never had the restaurant's books audited by an accountant. In addition to denying Salazar's accusation of keeping two separate books for the restaurant, Bermudez stated that he turned the accounting books over to an accountant at the end of every month. Bermudez opined that the two sets of books provided by Salazar were "manufactured by splicing and erasing and using a copy machine to get different balances[.]" Moreover, Bermudez testified that Salazar

had access to books from Bermudez's other restaurants and that some of the inputs in the books provided by Salazar were based on those other restaurants.

The county court, as the trier of fact, was able to determine the credibility of witnesses and the weight to be given their testimony. As such, the county court was not persuaded by the testimony and evidence presented by Salazar. Reviewing the appeal for error appearing on the record, we determine the decision to dismiss Salazar's counterclaim conforms to the law and is supported by competent evidence.

### SALAZAR'S CLAIM AGAINST PORRAS

Finally, Salazar contends that the county court and district court erred in finding his claim against Porras was frivolous and in awarding attorney fees because there was sufficient evidence in the record for him to believe Porras helped Bermudez take money and inventory from the restaurant.

Neb. Rev. Stat. § 25-824(2) (Reissue 2016) provides in part:

> . . . in any civil action commenced or appealed in any court of record in this state, the court shall award as part of its judgment and in addition to any other costs otherwise assessed reasonable attorney's fees and court costs against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith.

Moreover, a frivolous action is one in which a litigant asserts a legal position wholly without merit; that is, the position is without rational argument based on law and evidence to support the litigant's position. *TFF, Inc. v. SID No. 59,* 280 Neb. 767, 790 N.W.2d 427 (2010). The term "frivolous" connotes an improper motive or legal position so wholly without merit as to be ridiculous. *Id.*

The county court determined that Salazar "offered no evidence against [Porras] and admitted that he had no evidence to offer on his third-party complaint and that he knew that before time of trial" and the district court agreed. Salazar's testimony at trial indicated that he only included Porras in his counterclaim because he believed she was helping Bermudez take the $18,000. However, Salazar acknowledged that he had no evidence that Porras took anything, despite the allegations against her listed in his lawsuit. Salazar offered no other reasonable explanation for including Porras in the suit.

We agree with the county court's determination. Based upon our review of the record, there is no reasonable justification for including Porras in his third-party complaint, other than a "belief" that she was helping Bermudez take $18,000 from the restaurant or some of the "missing" inventory. In his testimony, Salazar admitted he had no evidence she took anything. Therefore, we find Salazar's claim to be without merit.

### CONCLUSION

For the foregoing reasons, we affirm the district court's affirmation of the county court's decision.

AFFIRMED.